**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff/Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 12-312-RGA |
| THE HELENE SMALL INSURANCE TRUST, by and through its trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB, | ) ) ) ) |
| | ) |
| Defendant/Counterclaim-Plaintiff. | ) ) |

**PHL VARIABLE INSURANCE COMPANY'S**
**OPENING BRIEF IN SUPPORT OF**
**<u>MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS</u>**

ASHBY & GEDDES
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim-Defendant*
*PHL Variable Insurance Company*

*Of Counsel*:

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, McDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

Dated: June 22, 2012

{00644752;v1 }

**TABLE OF CONTENTS**

**Page**

I. NATURE OF CASE AND PROCEDURAL HISTORY ................................................... 1

II. SUMMARY OF ARGUMENT .......................................................................................... 1

III. FACTUAL BACKGROUND .............................................................................................. 3

IV. STANDARD OF REVIEW ................................................................................................. 4

V. ARGUMENT ........................................................................................................................ 6

    A. The Trust Failed to State an Independent Cause of Action for Declaratory Judgment Related to the Validity of the Policy ........................................................ 6

    B. The Trust Failed to Allege Facts Sufficient to Support a Declaration that the Policy is Valid ................................................................................................................ 9

    C. The Trust Failed to Allege a Judiciable Controversy to Support its Counterclaim for Declaratory Judgment Related to the Policy's Cost of Insurance ................... 11

    D. The Trust Failed to Establish Subject Matter Jurisdiction for its Counterclaim for Declaratory Judgment Related to the Policy's Cost of Insurance ........................ 13

VI. PRAYER ............................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases** **Page**

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) .................................................................................................................. 12

*Aldens, Inc. v. Packel*,
   524 F.2d 38 (3d Cir. 1975) ..................................................................................................... 6, 13

*Ambromovage v. United Mine Workers of Am.*,
   726 F.2d 972 (3d Cir. 1984) ....................................................................................................... 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 6, 12

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936) .................................................................................................................. 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 5, 6, 12

*Christopher v. Harbury*,
   536 U.S. 403 (2002) .................................................................................................................... 5

*Kimmel v. Cavalry Portfolio Serv., LLC*,
   747 F. Supp. 2d 427 (E.D. Pa. 2010) ......................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................................................... 5

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993) ............................................................................................................ 5

*Penn Mut. Life Ins. Co. v. Barbara Glasser Life Ins. Trust*,
   No. 09-677-JJF, 2010 WL 3023420 (D. Del. July 30, 2010) ...................................................... 8

*Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*,
   No. 09-300-JJF, 2010 WL 3023402 (D. Del. July 30, 2010) ............................................... 8, 12

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) .................................................................................................. 5, 12

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*,
   675 F. Supp. 2d 562 (D. Del. 2009) ........................................................................................ 6, 8

*Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*,
  344 U.S. 237 (1952) ............................................................................................................ 12

*Wolfson v. Artisans Sav. Bank*,
  83 F.R.D. 552 (D. Del. 1979) ............................................................................................. 14

**STATUTES**

28 U.S.C. § 1332(a) ................................................................................................................ 13, 14

28 U.S.C. § 2201 ......................................................................................................................... 12

**RULES**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 5

Fed. R. Civ. P. 12(b)(1) .......................................................................................................... 13, 14

Fed. R. Civ. P. 13(a)(1) ................................................................................................................ 13

Fed. R. Civ. P. 13(b) .................................................................................................................... 13

iii

I.      NATURE OF CASE AND PROCEDURAL HISTORY

On March 15, 2012, Plaintiff/Counterclaim-Defendant PHL Variable Insurance Company ("Phoenix") filed this declaratory judgment action against Defendant/Counterclaim-Plaintiff The Helene Small Insurance Trust (the "Trust"), seeking a declaration that a $10 million life insurance policy insuring the life of Helen Small (the "Policy") was void *ab initio* due to a lack of insurable interest and as an illegal wagering contract.  *See* Phoenix's Complaint [D.I. 1]. Phoenix further sought declaratory relief regarding the disposition of premiums paid on the Policy.  *Id.* at p. 11–12.

On May 4, 2012, the Trust filed an answer to Phoenix's Complaint, which asserted several affirmative defenses, including statute of limitations, unclean hands, waiver and estoppel, and a defense stating that Phoenix has an obligation to refund premiums to the Trust in connection with its action to void the Policy.  *See* the Trust's Answer and Counterclaims (the "Counterclaim") [D.I. 6], ¶¶ 39-49.  The Trust also asserted counterclaims, seeking a declaration that Phoenix is barred from seeking to void the Policy due to several defensive theories, including statute of limitations, unclean hands, waiver and estoppel.  *Id.* at p. 25-26.  The Trust further seeks a declaration that, in the event the Policy is voided, Phoenix must refund premiums to the Trust.  *Id.*  Finally, the Trust seeks a declaration that, unrelated to Phoenix's action to void the Policy, Phoenix improperly raised the cost of insurance ("COI") charges for the Policy.  *Id.*

II.     SUMMARY OF ARGUMENT

The Trust's trustee is Wilmington Savings Fund Society, FSB, ("WSFS") successor in interest to Christiana Bank & Trust Company ("CB&T").  On three prior occasions, in response to a declaratory judgment action in which an insurer sought a declaration that a policy is void or rescinded, CB&T filed counterclaims seeking an inverse declaration—that a policy was valid and enforceable.  On three prior occasions, courts in this District have correctly dismissed such

counterclaims as duplicative of the claim seeking to void the policy.  The counterclaims brought by the Trust in this case—seeking a declaration that the Policy is valid, that Phoenix is precluded from seeking to void the Policy, and that Phoenix must return premiums paid on the Policy—are no different.  A resolution of Phoenix's declaratory judgment claim—whether in Phoenix's favor or in the Trust's favor—will necessarily resolve these claims.  As such, they are redundant and should be dismissed.

Moreover, even if the Court were to entertain the Trust's request for a declaratory judgment that the Policy is valid, the Trust has failed to set forth facts that, if true, would be sufficient to establish that the Policy was issued with a valid insurable interest, as recently enunciated by the Delaware Supreme Court in *PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1059 (Del. 2011).  The Trust's counterclaims related to the Policy's validity should therefore be dismissed for failure to state a claim upon which relief can be granted.

Additionally, seemingly as a "throw-in" claim, the Trust seeks a declaratory judgment that, prior to and unrelated to Phoenix's seeking a declaration that the Policy is void, Phoenix improperly raised the Policy's COI charge.  This counterclaim falls squarely within the realm of a permissive counterclaim, as it does not relate to the same transaction that gives rise to Phoenix's Complaint.  As such, the Trust must establish independent subject matter jurisdiction, which it has failed to do, as there are no factual allegations that would allow the Court to conclude that there is more than $75,000 in dispute.  Moreover, even if the Trust were to establish a sufficient amount in controversy, the Trust has failed to set forth facts sufficient to entitle it to relief and has failed to establish anything more than a nebulous or contingent conflict related to the COI charges.  Specifically, the Trust makes only the conclusory allegation that

Phoenix improperly raised the COI charges, and seeks a declaration that the COI charges must be reduced. The Trust does not make any actual factual allegations as to *what* the COI increase actually was, *when* or *if* the COI increase went into effect, *why* the COI increase was improper, or *how* the COI increase caused the Trust damages. Finally, the Trust has failed to explain why it would be entitled to the remedy it seeks—a declaration that the COI charges must be reduced––given that it acknowledges that Phoenix is permitted to raise COI under "specifically defined circumstances". The Trust has simply failed to set forth facts sufficient to entitle it to relief and has failed to establish an actual case or controversy ripe for judicial intervention. As such, the COI claim must be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

### III.   FACTUAL BACKGROUND

Within its Counterclaim, the Trust sets forth its versions of the facts leading to the issuance of the Policy, which appear intended to simply dispute the allegations of fact set forth in Phoenix's Complaint. *See generally* Counterclaim at ¶¶ 56-57, 81-86, 91-94. The Trust also asserts a litany of irrelevant and unsupported allegations designed to inaccurately conflate the legitimate life settlement market with the impermissible stranger originated life insurance ("STOLI") scheme perpetrated by the Trust and others. *Id.* at ¶¶ 58-60, 62-80; 87-88, 90. Finally, seemingly in passing, the Trust asserts vague and conclusory allegations related to Phoenix's adjustment of COI charges. *Id.* at ¶¶ 61, 89. Even if all of the factual allegations set forth in the Counterclaim were deemed true, they would not be sufficient to state a claim against Phoenix.

With respect to the Policy at issue, the Trust asserts that Helene Small "established" the Trust for the purpose of owning a life insurance policy insuring her life, that Phoenix issued the Policy with a March 20, 2007 issue date, that all required premiums have been paid, and that Ms.

Small "later" sold the beneficial interest in the Trust to an unidentified investor. *Id.* at ¶¶81-86. Notably, the Trust does not make any allegations as to who funded the premiums on the Policy or why Ms. Small was allegedly seeking issuance of a $10 million life insurance policy, factors heavily relied upon by the Delaware Supreme Court in *Dawe*. Based only on the conclusory statements set forth above, the Trust seeks a declaration that the Policy is valid, that Phoenix is precluded from seeking to void the Policy based on several affirmative defenses, and that, even if the Court finds the Policy void, Phoenix must return premiums paid on the Policy. *Id.* at p. 25-26. In other words, the Trust asks for an exact inverse declaration of the one sought by Phoenix in its Complaint.

The Trust also includes two paragraphs related to Phoenix's increase in COI charges. *Id. at* ¶¶ 61, 89. The Trust alleges that in 2010, Phoenix raised the COI charges only to be ordered to reverse the increase by the New York Department of Insurance. *Id.* The Trust does not allege that Phoenix failed to reverse the 2010 increase or otherwise articulate any controversy related to the 2010 increase. Instead, the Trust alleges that in 2011 Phoenix "impermissibly" increased the COI charges and that such action "was a willful and unjustified breach of Phoenix's contracts with its policy owners", which presumably is intended to include the Trust. *Id.* at ¶61. Based solely on these allegations, the Trust seeks a declaration that Phoenix "improperly raised the cost of insurance charges for the Policy, in violation of the Policy's terms, and must reduce the charges and pay the Trust all damages incurred as a result of the improper charges." *Id*. at p. 26.

## IV.   STANDARD OF REVIEW

A complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution;

(2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198 (1962). A federal court is presumed to lack subject matter jurisdiction until a plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Assuming the factual allegations are true, even if doubtful in fact, the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). Thus, stating a claim upon which relief can be granted "'requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In sum, if a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then the complaint is "plausible on its face," and will survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

## V. ARGUMENT

### A. The Trust Failed to State an Independent Cause of Action for Declaratory Judgment Related to the Validity of the Policy

A counterclaim for declaratory relief may be dismissed as redundant where "there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 675 F. Supp. 2d 562, 566 (D. Del. 2009) (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975)). Redundant claims should be dismissed because "the counterclaim will become moot upon disposition of the complaint." *Id.*

Phoenix seeks a declaration that the Policy is void and seeks a declaration regarding the disposition of premiums paid on the Policy. *See* Complaint at ¶¶ 98, 101. The Trust asserts statute of limitations, waiver, estoppel and unclean hands as affirmative defenses, and also asserts as an affirmative defense that Phoenix must refund premiums in connection with seeking to void the Policy. *See* Counterclaim at ¶¶ 40, 42-47, 49. Through its Counterclaim, among other relief, the Trust seeks declarations (1) that Phoenix's purported voiding of the Policy is unlawful and improper and that the Policy remains valid and enforceable; (2) that Phoenix's attempt to void the Policy is barred by the statute of limitations, that Phoenix has waived any right to void the Policy and/or is estopped from voiding the Policy based on its own conduct, and that Phoenix's unclean hands bar it from voiding the Policy; and (3) in the alternative, that if Phoenix is successful in voiding the Policy, Phoenix must return all premiums paid for the Policy to the Trust. *Id.* at ¶¶ 98-101. These counterclaims must be dismissed, as the Court will

necessarily determine all of these issues when adjudicating Phoenix's claim for a declaratory judgment on these exact claims.

The first and third sets of declarations the Trust seeks are simply the diametric inverse of the relief Phoenix seeks. With respect to the validity of the Policy, the Court's determination of Phoenix's claim will render the Trust's counter-claim on this issue moot: if the Policy is void, it is not valid; if the Policy is not void, it is valid. Similarly, Phoenix seeks a declaration that it is entitled to retain the premiums, or at least some portion thereof, in light of the fact that the policy is an illegal wagering contract and void, and due to the damages it has suffered as a result of the Trust's actions and the issuance of the Policy. *See* Complaint at p. 11-12. The Trust seeks a declaration that Phoenix must return these premiums to the Trust. *See* Counterclaim at ¶ 101. Once again, a resolution of Phoenix's claim regarding the disposition of the premiums will moot the Trust's claim: the premiums are a fixed fund that can only be disposed of once. As such, these counterclaims must be dismissed as redundant.

With respect to the second set of declarations the Trust seeks, the Trust has simply repackaged some of its affirmative defenses as a counterclaim. In resolving Phoenix's Complaint, the Court will necessarily adjudicate these affirmative defenses and, in turn, moot the declaratory relief the Trust seeks. If Phoenix's claims are barred by a statute of limitations, waiver, estoppel or unclean hands, then the Court will decide as such when disposing of Phoenix's Complaint. The Trust's pursuit of these affirmative defenses as a declaratory judgment is overtly redundant and, as such, they should be dismissed.

In three prior cases in which CB&T, WSFS's predecessor in interest, acted as trustee, the defendant trust filed counterclaims virtually identical to the counterclaim asserted by the Trust herein. Unsurprisingly, in all three cases, a court in this District held that counterclaims seeking

a declaration that a policy is valid should be dismissed as redundant and duplicative of the insurance carrier's claim that a policy is void. For instance, in *Rucker*, the court dismissed the defendant trust's counterclaim seeking a declaration that an insurable interest existed and that the policy is not invalid, finding that the counterclaim was redundant. *Rucker*, 675 F. Supp. 2d at 566. The court explained that "[b]ecause Principal Life requests a declaration that the Policy lacked an insurable interest at its inception, a finding adverse to Principal Life on this issue would necessarily grant the relief the Trust desires . . . ." *Id.* at 566-67. Courts in this District reached the same conclusion in two subsequent cases involving CB&T. *See Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, No. 09-300-JJF, 2010 WL 3023402, at *6 (D. Del. July 30, 2010) (dismissing as redundant counterclaims for declarations that plaintiff had no basis for rescission of the insurance policy at issue and that an insurable interest existed at the inception of the policy); *Penn Mut. Life Ins. Co. v. Barbara Glasser Life Ins. Trust*, No. 09-677-JJF, 2010 WL 3023420, at *2-3 (D. Del. July 30, 2010) (same). As in *Rucker*, *Espinosa,* and *Glasser*, this Court should dismiss the Trust's counterclaims seeking declarations concerning the validity of the Policy and the disposition of premiums paid on the Policy.

Additionally, the courts in *Espinoza* and *Glasser* concluded that, to the extent the trusts sought declarations that, setting aside the insurance carrier's claims to void the policies, the policies were otherwise "valid and in full force and effect", such counterclaims fail for lack of an actual, justiciable controversy. *Espinosa,* 2010 WL 3023402, at *7; *Glasser*, 2010 WL 3023420, at *4. Such is similarly the case here, to the extent the Trust intends its request for a declaration that the Policy "remains valid and enforceable" to extend beyond the issue of whether the Policy is void due to lack of an insurable interest and as a prohibited wagering contract.

### B. The Trust Failed to Allege Facts Sufficient to Support a Declaration that the Policy is Valid

In *Dawe*, the Delaware Supreme Court answered three Certified Questions related to an insurer's ability to contest a life insurance policy for lack of insurable interest after the expiration of the policy's contestability period and confirming the paramount importance of the insurable interest requirement. *See Dawe,* 28 A.3d at 1064. The *Dawe* Court emphatically held that a life insurance policy "procured as a mere cover for a wager" violates Delaware's insurable interest requirement. *Id.* at 1068, 1074 ("[A] life insurance policy that is validly issued is assignable to anyone, with or without an insurable interest, at any time. The key distinction is that a third party cannot use the insured as a means or instrumentality to procure a policy that, when issued, would otherwise lack an insurable interest.").

The *Dawe* Court held that, under the Delaware Constitution, Delaware common law, and Delaware Insurance Code, insurable interest is a substantive requirement that requires more than mere "technical compliance", and which cannot be papered around. *Id.* at 1078. Specifically, the *Dawe* Court concluded that a third-party cannot "use[]the insured as an instrumentality to procure the policy . . . ." *Id.* at 1074. "'If the insured procures the policy at the behest of another, the policy may nevertheless lack a legally insurable interest.'" *Id.* at 1075 (quoting *Rucker*, 735 F. Supp. 2d at 140). Moreover, "if a third party financially induces the insured to procure a life insurance contract with the intent to immediately transfer the policy to a third party, the contract lacks an insurable interest. Stated differently, if an insured procures a policy as a mere cover for a wager, then the insurable interest requirement is not satisfied." *Id.*

Based on its analysis of the historical development of the insurable interest requirement and rules of statutory construction, the Delaware Supreme Court concluded that in order to determine whether a policy was issued with a valid insurable interest, Delaware Insurance Code

Section 2704 "requires courts to scrutinize the circumstances under which the policy was issued and determine who in fact procured or effected the policy." *Id.* at 1076. Notably, the *Dawe* Court identified an insured's payment of premiums or funding of a trust established to own a policy, as providing "strong evidence" that a policy was "bona fide."[1] *Id.* ("A bona fide insurance policy sale or assignment requires that the insured take out the policy in good faith—not as a cover for a wagering contract."). The *Dawe* Court did add the caveat that nominal funding by the insured would be insufficient to establish that a policy was bona fide. *Id.* Regardless, the *Dawe* Court concluded that for the insurable interest requirement to be satisfied "either the individual insured or the trustee must intend to purchase the policy for lawful insurance purposes, and not as a cover for a waging contract." *Id.* at 1078.

In support of its claim that it is entitled to a declaration that the Policy is valid, the Trust asserts only that Ms. Small "established" the Trust to procure the Policy and "later" sold the beneficial interest in the Trust to unidentified investors. *See* Counterclaim at ¶57. In *Dawe*, the Delaware Supreme Court charged courts with "scrutiniz[ing] the circumstances under which the policy was issued" when examining whether an insurable interest exists. *Dawe*, 28 A.3d at 1076. The Trust simply has not alleged facts sufficient to seek a declaration that an insurable interest exists.

Indeed, the Trust did not even provide this Court with information that is unquestionably within the Trust's control and that was expressly identified by the *Dawe* Court as critical to a court's examination of insurable interest. For example, as noted above, the *Dawe* Court

---

[1] The *Dawe* Court further differentiated between the legitimate life settlement market, whereby an insured can receive cash in exchange for unneeded life insurance, and STOLI, whereby life insurance policies are created for the benefit of third-parties lacking an insurable interest in the life of the insured. 28 A.3d at 1069-70. STOLI policies, the *Dawe* Court concludes, "lack an insurable interest and are thus an illegal wager on human life." *Id.* at 1070.

specifically held that the identity of the party funding premiums provides "strong evidence" regarding whether a policy is bona fide and satisfies the insurable interest requirement. *Id.* at 1076. The *Dawe* Court also held that for an insured to "establish" a trust, the insured must create and fund (more than nominally) the trust. *Id.* at 1078. The Trust has failed to make any allegations regarding the funding of the Trust or the identity of the party funding the payment of premiums on the Policy. The Trust also fails to make any allegations that the Policy was sought for legitimate insurance purposes or was otherwise obtained as part of a bona fide transaction.

As such, the Trust has failed to allege facts that, if true, would entitle them to a declaration that the policy was issued with an insurable interest, and has therefore failed to state a claim upon which relief could be granted.

C. **The Trust Failed to Allege a Judiciable Controversy to Support its Counterclaim for Declaratory Judgment Related to the Policy's Cost of Insurance**

The Trust acknowledges that Phoenix is entitled to increase the COI charge on its policies. *See* Counterclaim at ¶89. The Trust, however, apparently does not believe that Phoenix was entitled to raise the COI charge on the Policy. From the Counterclaim, however it is entirely unclear what forms the basis of the Trust's counterclaim with respect to the COI charge increase. The Trust makes only the conclusory allegation that Phoenix "impermissibly" increased the COI charges and that such action "was a willful and unjustified breach of" the Policy. *See id.* at ¶61. Based on this assertion, the Trust seeks a declaration that Phoenix "improperly raised the cost of insurance charges for the Policy, in violation of the Policy's terms, and must <u>reduce the charges</u> and pay the Trust all damages incurred as a result of the improper charge." *Id.* at p. 26 (emphasis added).

The Trust simply does not articulate what the actual COI increase is, whether the COI increase has actually taken effect, why the COI increase was improper, how the COI increase

violated the Policy's terms, or what damages, if any, it has suffered as a result. Under *Twombly* and *Iqbal*, these conclusory allegations are insufficient to allow this Court to "draw the reasonable inference that [Phoenix] is liable for the misconduct alleged" and the claim should be dismissed. *See Iqbal,* 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556; *Phillips*, 515 F.3d at 234.

In addition to failing to satisfy the *Iqbal* and *Twombly* standards, the Trust's allegations have a more fundamental failing, as they do not allege the existence of a justiciable controversy ripe for resolution. Under the Declaratory Judgment Act, a court may "declare the rights and other legal relations of any interested party seeking such declaration," where a "case of actual controversy" exists. 28 U.S.C. § 2201. A "case of actual controversy" means one of a justiciable nature. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 325 (1936). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241 (1937). "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Id.* at 241. "Further, the controversy must be ripe for judicial adjudication, meaning that it cannot be 'nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" *Espinosa*, 2010 WL 3023402, at *7 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952)). Here, the Trust does not allege that it has actually been assessed a COI charge higher than what was permissible under the terms of the Policy. Without such a concrete dispute, the Trust is essentially asking this Court for an impermissible advisory opinion.

Moreover, even if the allegations were sufficient to maintain a cause of action, the Trust would still not be entitled to a declaration that Phoenix must <u>reduce</u> COI charges. The form of relief sought is critical in light of the Trust's acknowledgment that Phoenix is permitted to increase COI charges, as the Trust apparently disputes only the propriety of this particular increase. Even if the particular increase were improper, which it was not, this does not lead to the conclusion that the COI charges must be <u>reduced</u> in the future.

D. **The Trust Failed to Establish Subject Matter Jurisdiction for its Counterclaim for Declaratory Judgment Related to the Policy's Cost of Insurance**

More fundamentally, the claims related to the Policy's COI charges must be dismissed because the Trust has failed to establish subject matter jurisdiction, as it did not set forth allegations sufficient to allow this Court to determine that there is an amount in controversy related to the COI charges that exceeds $75,000. FED. R. CIV. P. 12(b)(1); 28 U.S.C. § 1332(a). Whether a defendant must prove independent subject matter jurisdiction for each counterclaim depends upon whether the counterclaim is compulsory or permissive. A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim. *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 988 (3d Cir. 1984). A permissive counterclaim, on the other hand, requires a basis of federal jurisdiction independent of the opposing party's claim. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3d Cir.1975). A permissive counterclaim is broadly defined to include "any claim that is not compulsory." *Kimmel v. Cavalry Portfolio Serv., LLC*, 747 F. Supp. 2d 427, 431 (E.D. Pa. 2010); *see also* FED. R. CIV. P. 13(b). Pursuant to Rule 13 of the Federal Rules of Civil Procedure, a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1).

The Trust's counterclaim for a declaration that Phoenix has improperly raised the Policy's COI charges is a permissive counterclaim. Phoenix filed suit against the Trust to seek a declaration that the Policy is void *ab initio* based on a lack of insurable interest at the Policy's inception and as an illegal wagering contract, and to obtain a declaration concerning the disposition of premiums paid on the Policy. *See* Complaint at ¶¶ 36-38. The Trust's counterclaim is that, unrelated to either the issuance of the Policy or Phoenix's actions to seek to void the Policy, Phoenix impermissibly increased the Policy's COI charge. These two claims simply do not arise out of the same transaction or occurrence, and do not involve the same common nucleus of operative facts. Indeed, the only thing the claims have in relation to each other is that both implicate the Policy. Moreover, the Trust would not be precluded from raising claims related to the Policy's COI charges in subsequent litigation simply due to Phoenix having brought this action to void the Policy. As such, the COI counterclaim is permissive, and the Trust must demonstrate that the Court has independent subject-matter jurisdiction over this counterclaim. *See Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 552, 555 n.2 (D. Del. 1979) (stating that, even if diversity of citizenship had been asserted as a jurisdictional ground, defendants still would have to meet amount-in-controversy requirement for each permissive counterclaim). As the Trust has not alleged any facts that would allow the Court to conclude that there was $75,000 in controversy, the COI counterclaim must be dismissed. *See* FED. R. CIV. P. 12(b)(1); 28 U.S.C. § 1332(a).

## VI.   PRAYER

For the reasons stated above, Phoenix respectfully requests that the Court dismiss the Trust's counterclaims and grant Phoenix such other and further relief to which it may be justly entitled.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

---

Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim-Defendant PHL Variable Insurance Company*

*Of Counsel*:

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, McDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

Dated: June 22, 2012