IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Counterclaim-Defendant, | ) ) | |
| v. | ) ) | C.A. No. 12-312 (RGA) |
| THE HELENE SMALL INSURANCE TRUST, by and through its trustee, WILMINGTON SAVINGS FUND SOCIETY, FSB, | ) ) ) ) ) | |
| Defendant/Counterclaim-Plaintiff. | ) | |

**PHL VARIABLE INSURANCE COMPANY'S
OPENING BRIEF IN SUPPORT OF
MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS**

ASHBY & GEDDES
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel*:

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, MCDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

*Attorneys for Plaintiff/Counterclaim-Defendant
PHL Variable Insurance Company*

Dated: August 20, 2012

# TABLE OF CONTENTS

I.     NATURE OF CASE AND PROCEDURAL HISTORY ................................................... 1

II.    SUMMARY OF ARGUMENT ....................................................................................... 1

III.   FACTUAL BACKGROUND ......................................................................................... 3

IV.   STANDARD OF REVIEW ........................................................................................... 5

V.    ARGUMENT .................................................................................................................. 6

     A.     The Trust Failed to State an Independent Cause of
            Action for Declaratory Judgment Related to the Validity of the Policy ................ 6

     B.     The Trust Failed to Allege Facts Sufficient to Support a Declaration that the
            Policy is Valid ...................................................................................................... 9

     C.     The Trust's Breach of Contract Claims Fail ....................................................... 12

          1.     The Trust Fails to Allege Facts Sufficient to State a Claim
                   for Breach of Contract Related to COI Charges ...................................... 12

          2.     The Trust Failed to Establish Subject Matter Jurisdiction for its
                   Counterclaim for Breach of Contract Related to the Policy's Cost of
                   Insurance ................................................................................................. 13

          3.     The Trust Fails to State a Claim Upon Which Relief May be Granted
                   Regarding Phoenix's Request to Retain Premiums ................................. 15

VI.   PRAYER ...................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir. 1975)..................................................................... 6, 13

*Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972 (3d Cir. 1984) ........................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 6

*Baker v. Carr,* 369 U.S. 186 (1962)............................................................................................. 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 6

*Christopher v. Harbury*, 536 U.S. 403 (2002) ............................................................................ 5

*Kimmel v. Cavalry Portfolio Serv., LLC*, 747 F. Supp. 2d 427 (E.D. Pa. 2010) ......................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................................... 5

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ......................................................................... 5

*Moore Business Forms, Inc. v. Cordant Holdings Corp.*,
    No. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995).................................................... 16

*Penn Mut. Life Ins. Co. v. Barbara Glasser Life Ins. Trust*,
    No. 09-677-JJF, 2010 WL 3023420 (D. Del. July 30, 2010)............................................ 9

*Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, No. 09-300-JJF, 2010 WL
    3023402 (D. Del. July 30, 2010) ............................................................................... 8, 9, 15

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)...................................................... 6

*PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*,
    28 A.3d 1059 (Del. 2011)......................................................................... 2, 3, 9, 10, 11, 16

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*,
    675 F. Supp. 2d 562 (D. Del. 2009) .............................................................. 6, 8, 9, 10, 15

*Reinhard & Kreinberg v. Dow Chem. Co.*, No. 3003, 2008 WL 868108
    (Del. Ch. Mar. 29, 2008) ................................................................................................ 14

*VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606 (Del. 2003) ........................................ 16

*Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 552 (D. Del. 1979) .................................................... 14

ii

**Statutes**

28 U.S.C. § 1332 ..................................................................................................................... 13, 14

**Rules**

FED. R. CIV. P. 12(b)(1) ......................................................................................................... 13, 14

FED. R. CIV. P. 12(b)(6) ........................................................................................................... 5, 6

FED. R. CIV. P. 13(a)(1) ............................................................................................................. 13

FED. R. CIV. P. 13(b) .................................................................................................................. 13

FED. R. CIV. P. 8(a)(2) ................................................................................................................. 6

iii

## I.  NATURE OF CASE AND PROCEDURAL HISTORY

Plaintiff/Counterclaim-Defendant PHL Variable Insurance Company ("Phoenix") filed this declaratory judgment action against Defendant/Counterclaim-Plaintiff The Helene Small Insurance Trust (the "Trust"), seeking a declaration that a $10 million life insurance policy insuring the life of Helen Small (the "Policy") is void due to a lack of insurable interest and as an illegal wagering contract.  *See* Phoenix's Complaint [D.I. 1].  Phoenix further seeks declaratory relief regarding the disposition of premiums paid on the Policy.  *Id.* at p. 11–12.

The Trust answered Phoenix's Complaint, asserting several affirmative defenses, including statute of limitations, unclean hands, waiver and estoppel, and a defense stating that Phoenix has an obligation to refund premiums to the Trust in connection with its action to void the policy.  *See* The Trust's First Amended Answer and Counterclaims (the "Counterclaim") [D.I. 23], ¶¶ 39-49.  The Trust also asserts counterclaims, seeking a declaration that Phoenix is barred from seeking to void the policy due to several defensive theories, including statute of limitations, unclean hands, waiver and estoppel.  *Id.* ¶ 140.  The Trust further seeks a declaration that, in the event the Policy is voided, Phoenix must refund premiums to the Trust.  *Id.* ¶ 141. Additionally, the Trust asserts a breach of contract claim that, unrelated to Phoenix's action to void the Policy, Phoenix improperly raised the cost of insurance ("COI") charges for the Policy. *Id.* ¶¶ 145-47.  Finally, the Trust claims that Phoenix has breached the terms of the Policy by contesting the Policy and seeking to retain the premiums paid for the Policy if it prevails.  *Id.* ¶ 148.

## II.  SUMMARY OF ARGUMENT

The Trust's trustee is Wilmington Savings Fund Society, FSB, ("WSFS") successor in interest to Christiana Bank & Trust Company ("CB&T").  On three prior occasions, in response to a declaratory judgment action in which an insurer sought a declaration that a policy is void or

rescinded, CB&T filed counterclaims seeking an inverse declaration—that a policy is valid and enforceable.   On three prior occasions, courts in this District have correctly dismissed such counterclaims as duplicative of the claim seeking to void the policy.   The counterclaims brought by the Trust in this case—seeking a declaration that the Policy is valid, that Phoenix is precluded from seeking to void the Policy, and that Phoenix must return premiums paid on the Policy—are no different.   A resolution of Phoenix's declaratory judgment claim—whether in Phoenix's favor or in the Trust's favor—will necessarily resolve these claims.   As such, they are redundant and should be dismissed.

Moreover, even if the Court were to entertain the Trust's request for a declaratory judgment that the Policy is valid, the Trust has failed to set forth facts that, if true, would be sufficient to establish that the Policy was issued with a valid insurable interest, as recently enunciated by the Delaware Supreme Court in *PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1059 (Del. 2011).   The Trust's counterclaims related to the Policy's validity should therefore be dismissed for failure to state a claim upon which relief can be granted.

Additionally, the Trust alleges a breach of contract counterclaim that, prior to and unrelated to Phoenix's seeking a declaration that the Policy is void, Phoenix improperly raised the Policy's COI charge.   This counterclaim falls squarely within the realm of a permissive counterclaim, as it does not relate to the same transaction that gives rise to Phoenix's Complaint. As such, the Trust must establish independent subject matter jurisdiction, which it has failed to do, as there are no factual allegations that would allow the Court to conclude that there is more than $75,000 in dispute.   Moreover, even if the Trust were to establish a sufficient amount in controversy, the Trust has failed to set forth facts sufficient to entitle it to relief.   Specifically, the

Trust simply attempts to conflate a 2010 COI increase that the Policy was not subject to with a 2011 COI increase to which the Policy was subject. The Trust has failed to allege a breach of the contract, and has failed to allege damages.

Finally, the Trust claims that Phoenix has breached the terms of the Policy by seeking to retain premiums in its declaratory judgment action. As a matter of law, Phoenix cannot breach the contract by seeking judicial relief. Either Phoenix is legally entitled to the relief it seeks in its complaint or it is not.

### III.   FACTUAL BACKGROUND

Within its Counterclaim, the Trust sets forth its version of the facts leading to the issuance of the Policy, which appear intended to simply dispute the allegations of fact set forth in Phoenix's Complaint. *See generally* Counterclaim ¶¶ 60-61, 97-101, 134-36. The Trust also asserts a litany of irrelevant and unsupported allegations designed to inaccurately conflate the legitimate life settlement market with the impermissible stranger originated life insurance ("STOLI") scheme perpetrated by the Trust and others. *Id.* ¶¶ 62-65, 74-96; 102-03, 107-08. Finally, the Trust asserts vague and conclusory allegations related to Phoenix's adjustment of COI charges. *Id.* ¶¶ 119-22. Even if all of the factual allegations set forth in the Counterclaim were deemed true, they would not be sufficient to state a claim against Phoenix.

With respect to the Policy at issue, the Trust asserts that Helene Small "established" the Trust for the purpose of owning a life insurance policy insuring her life, that Phoenix issued the Policy with a March 20, 2007 issue date, that all required premiums have been paid, and that Ms. Small "later" sold the beneficial interest in the Trust to an unidentified investor. *Id.* ¶¶ 97-101. Notably, the Trust does not make any allegations as to who funded the premiums on the Policy or why Ms. Small was allegedly seeking issuance of a $10 million life insurance policy, factors heavily relied upon by the Delaware Supreme Court in *Dawe*. Based only on the conclusory

statements set forth above, the Trust seeks a declaration that the Policy is valid, that Phoenix is precluded from seeking to void the Policy based on several affirmative defenses, and that, even if the Court finds the Policy void, Phoenix must return premiums paid on the Policy. *Id.* at ¶¶140-43. In other words, the Trust asks for an exact inverse declaration of the one sought by Phoenix in its Complaint.

The Trust also claims that Phoenix breached the Policy by increasing the Policy's COI charges. *Id.* ¶¶ 109-18. The Policy provides that the

> rates for the Cost of Insurance Charge as of the Policy Date are based on the sex, if applicable, Age, Risk Classification, Basic Face Amount, Supplemental Face Amount, Net Amount at Risk, and duration that the coverage has been in force for the Insured.
>
> The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. . . .
>
> We review our Cost of Insurance rates periodically, and may re-determine Cost of Insurance rates at such time on a basis that does not discriminate unfairly within any class of insureds. Any change in rates will be determined prospectively. We will not distribute past gains or recoup past losses, if any, by changing the rates.

*See* Policy Form, attached as Exhibit A, p. 12.

The Trust alleges that in 2010, Phoenix raised COI charges on certain policies only to be ordered to reverse the increase by the New York Department of Insurance. *Id.* ¶¶ 116-17. The Trust alleges that the 2010 increase was based on factors such as accumulated value, which the Trust contends is not one of the factors that Phoenix is permitted to consider when adjusting cost of insurance. *Id.* The Trust cites to statements made in Phoenix's 10-K filings related to the 2010 increase in support of this assertion. *Id.* ¶¶ 106, 121. The Trust does not allege that the Policy was actually among the policies involved in the 2010 increase, nor does it allege that

Phoenix failed to reverse the 2010 increase or otherwise articulate any controversy related to the 2010 increase.

Instead, the Trust alleges that in 2011, Phoenix increased the COI charges on other policies and that the Policy was among those affected. *See id*. ¶ 115. The Trust then makes the conclusory allegation that Phoenix breached the Policy by increasing the COI charges based on policies' accumulated value, on a non-uniform basis, in an effort to recoup past losses. *Id*. ¶ 147. The Trust does not set forth facts that would allow for the conclusion that it has suffered damages in excess of $75,000 as a result of any alleged breach.

## IV.   STANDARD OF REVIEW

A complaint must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198 (1962). A federal court is presumed to lack subject matter jurisdiction until a plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move for dismissal based on a plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Assuming the factual allegations are true, even if doubtful in fact, the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the complaint need not make detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations and citations omitted). Thus, stating a claim upon which relief can be granted "'requires a complaint with enough factual matter (taken as true) to suggest' the required element" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). In sum, if a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), then the complaint is "plausible on its face," and will survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 570.

## V.     ARGUMENT

### A. The Trust Failed to State an Independent Cause of Action for Declaratory Judgment Related to the Validity of the Policy

A counterclaim for declaratory relief may be dismissed as redundant where "there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 675 F. Supp. 2d 562, 566 (D. Del. 2009) (quoting *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975)). Redundant claims should be dismissed because "the counterclaim will become moot upon disposition of the complaint." *Id.*

Phoenix seeks a declaration that the Policy is void and seeks a declaration regarding the disposition of premiums paid on the Policy.  *See* Complaint ¶ 140.  The Trust asserts statute of limitations, waiver, estoppels, and unclean hands as affirmative defenses, and also asserts as an affirmative defense that Phoenix must refund premiums in connection with seeking to void the Policy.  *See* Counterclaim ¶¶ 40, 42-47, 49.  Through its Counterclaim, among other relief, the Trust seeks declarations (1) that Phoenix's purported voiding of the Policy is unlawful and improper and that the Policy remains valid and enforceable; (2) that Phoenix's attempt to void the Policy is barred by the statute of limitations, that Phoenix has waived any right to void the Policy and/or is estopped from voiding the Policy based on its own conduct, and that Phoenix's unclean hands bar it from voiding the Policy; and (3) in the alternative, that if Phoenix is successful in voiding the Policy, Phoenix must return all premiums paid for the Policy to the Trust.  *Id.* ¶¶ 140-41.  These counterclaims must be dismissed, as the Court will necessarily determine all of these issues when adjudicating Phoenix's claim for a declaratory judgment on these exact claims.

The first and third sets of declarations the Trust seeks are simply the diametric inverse of the relief Phoenix seeks.  With respect to the validity of the Policy, the Court's determination of Phoenix's claim will render the Trust's counterclaim on this issue moot: if the Policy is void, it is not valid; if the Policy is not void, it is valid.  Similarly, Phoenix seeks a declaration that it is entitled to retain the premiums, or at least some portion thereof, in light of the fact that the Policy is an illegal wagering contract and void and due to the damages it has suffered as a result of the Trust's actions and the issuance of the Policy.  *See* Complaint p. 11-12.  The Trust seeks a declaration that Phoenix must return these premiums to the Trust.  *See* Counterclaim ¶ 141.  Once again, a resolution of Phoenix's claim regarding the disposition of the premiums will moot

the Trust's claim: the premiums are a fixed fund that can only be disposed of once. As such, these counterclaims must be dismissed as redundant.

With respect to the second set of declarations the Trust seeks, the Trust has simply repackaged some of its affirmative defenses as a counterclaim. In resolving Phoenix's Complaint, the Court will necessarily adjudicate these affirmative defenses and, in turn, moot the declaratory relief the Trust seeks. If Phoenix's claims are barred by a statute of limitations, waiver, estoppel, or unclean hands, then the Court will decide accordingly when disposing of Phoenix's Complaint. The Trust's pursuit of these affirmative defenses as a declaratory judgment is overtly redundant and, as such, they should be dismissed.

In three prior cases in which CB&T, WSFS's predecessor in interest, acted as trustee, the defendant trust filed counterclaims virtually identical to the counterclaim asserted by the Trust herein. Unsurprisingly, in all three cases, a court in this District held that counterclaims seeking a declaration that a policy is valid should be dismissed as redundant and duplicative of the insurance carrier's claim that a policy is void. For instance, in *Rucker*, the court dismissed the defendant trust's counterclaim seeking a declaration that an insurable interest existed and that the policy is not invalid, finding that the counterclaim was redundant. *Rucker*, 675 F. Supp. 2d at 566. The court explained that "[b]ecause Principal Life requests a declaration that the Policy lacked an insurable interest at its inception, a finding adverse to Principal Life on this issue would necessarily grant the relief the Trust desires . . . ." *Id.* at 566-67. Courts in this District reached the same conclusion in two subsequent cases involving CB&T. *See Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Trust*, No. 09-300-JJF, 2010 WL 3023402, at *6 (D. Del. July 30, 2010) (dismissing as redundant counterclaims for declarations that plaintiff had no basis for rescission of the insurance policy at issue and that an insurable interest existed at the

inception of the policy); *Penn Mut. Life Ins. Co. v. Barbara Glasser Life Ins. Trust*, No. 09-677-JJF, 2010 WL 3023420, at *2-3 (D. Del. July 30, 2010) (same).  As in *Rucker*, *Espinosa,* and *Glasser*, this Court should dismiss the Trust's counterclaims seeking declarations concerning the validity of the Policy and the disposition of premiums paid on the Policy.

Additionally, the courts in *Espinoza* and *Glasser* concluded that to the extent the trusts sought declarations that, setting aside the insurance carrier's claims to void the policies, the policies were otherwise "valid and in full force and effect", such counterclaims fail for lack of an actual, justiciable controversy.  *Espinosa,* 2010 WL 3023402, at *7; *Glasser*, 2010 WL 3023420, at *4.  Such is similarly the case here, to the extent the Trust intends its request for a declaration that the Policy "remains valid and enforceable" to extend beyond the issue of whether the Policy is void due to lack of an insurable interest and as a prohibited wagering contract.

**B.  The Trust Failed to Allege Facts Sufficient to Support a Declaration that the Policy is Valid**

In *Dawe*, the Delaware Supreme Court answered three Certified Questions related to an insurer's ability to contest a life insurance policy for lack of insurable interest after the expiration of the policy's contestability period and confirming the paramount importance of the insurable interest requirement.  *See Dawe,* 28 A.3d at 1064. The Dawe Court emphatically held that a life insurance policy "procured as a mere cover for a wager" violates Delaware's insurable interest requirement.  *Id.* at 1068, 1074 ("[A] life insurance policy that is validly issued is assignable to anyone, with or without an insurable interest, at any time.  The key distinction is that a third party cannot use the insured as a means or instrumentality to procure a policy that, when issued, would otherwise lack an insurable interest.").

The *Dawe* Court held that, under the Delaware Constitution, Delaware common law, and Delaware Insurance Code, insurable interest is a substantive requirement that requires more than mere "technical compliance", and which cannot be papered around.  *Id.* at 1078.  Specifically,

the *Dawe* Court concluded that a third-party cannot "use[]the insured as an instrumentality to procure the policy . . . ." *Id.* at 1074. "'If the insured procures the policy at the behest of another, the policy may nevertheless lack a legally insurable interest.'" *Id.* at 1075 (quoting *Rucker*, 735 F. Supp. 2d at 140). Moreover, "if a third party financially induces the insured to procure a life insurance contract with the intent to immediately transfer the policy to a third party, the contract lacks an insurable interest. Stated differently, if an insured procures a policy as a mere cover for a wager, then the insurable interest requirement is not satisfied." *Id.*

Based on its analysis of the historical development of the insurable interest requirement and rules of statutory construction, the Delaware Supreme Court concluded that in order to determine whether a policy was issued with a valid insurable interest, Delaware Insurance Code Section 2704 "requires courts to scrutinize the circumstances under which the policy was issued and determine who in fact procured or effected the policy." *Id.* at 1076. Notably, the *Dawe* Court identified an insured's payment of premiums or funding of a trust established to own a policy, as providing "strong evidence" that a policy was "bona fide."[1] *Id.* ("A bona fide insurance policy sale or assignment requires that the insured take out the policy in good faith— not as a cover for a wagering contract."). The *Dawe* Court did add the caveat that nominal funding by the insured would be insufficient to establish that a policy was bona fide. *Id.* Regardless, the *Dawe* Court concluded that for the insurable interest requirement to be satisfied "either the individual insured or the trustee must intend to purchase the policy for lawful insurance purposes, and not as a cover for a waging contract." *Id.* at 1078.

---

[1] The *Dawe* Court further differentiated between the legitimate life settlement market, whereby an insured can receive cash in exchange for unneeded life insurance, and STOLI, whereby life insurance policies are created for the benefit of third-parties lacking an insurable interest in the life of the insured. *Id.* at 1069-70. STOLI policies, the Dawe Court concludes, "lack an insurable interest and are thus an illegal wager on human life." *Id.* at 1070.

In support of its claim that it is entitled to a declaration that the Policy is valid, the Trust asserts only that Ms. Small "established" the Trust to procure the Policy and "later" sold the beneficial interest in the Trust to unidentified investors.  *See* Counterclaim ¶ 61.  In *Dawe*, the Delaware Supreme Court charged courts with "scrutiniz[ing] the circumstances under which the policy was issued" when examining whether an insurable interest exists.  *Dawe*, 28 A.3d at 1076.  The Trust simply does not provide the Court with sufficient factual allegations regarding these circumstances to allow this Court to conclude that an insurable interest exists.

Indeed, the Trust did not even provide this Court with information that is unquestionably within the Trust's control and that was expressly identified by the *Dawe* Court as critical to a court's examination of insurable interest.  For example, as noted above, the *Dawe* Court specifically held that the identity of the party funding premiums provides "strong evidence" regarding whether a policy is bona fide and satisfied the insurable interest requirement.  *Id.* at 1076.  The *Dawe* Court also held that for an insured to "establish" a trust, the insured must create and fund (more than nominally) the trust.  *Id.* at 1078.  The Trust has failed to make any allegations regarding the funding of the Trust or the identity of the party funding the payment of premiums on the Policy.  The Trust also fails to make any allegations that the Policy was sought for legitimate insurance purposes or was otherwise obtained as part of a bona fide transaction.

As such, the Trust has failed to allege facts sufficient to allow this Court to determine that the Policy was issued with a valid insurable interest and has therefore failed to state a claim upon which relief could be granted.

**C. The Trust's Breach of Contract Claims Fail**

    **1.    The Trust Fails to Allege Facts Sufficient to State a Claim for Breach of Contract Related to COI Charges**

The Trust claims that Phoenix breached the contract by (1) basing the COI increases on "actuarial and financial expectations" and a policy's level of accumulated value; (2) failing to apply the COI increase uniformly to a class of insureds; and (3) by increasing the COI in an attempt to recoup past losses. Counterclaim, at ¶¶ 119, 147. These allegations fail to state a breach for several reasons.

First, the Policy provides that COI rates are based on Phoenix's "expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions." *See* Ex. A at p. 12. The assertion that Phoenix is not permitted to consider "actuarial and financial expectations" when determining COI rates is simply wrong at best. The Policy further provides that "[t]he rates for the Cost of Insurance Charge . . . are based on . . . Net Amount at Risk," which is computed through a mathematical formula based on, among other variables, the "Policy Value." *Id.* As such, the Policy expressly provides for a determination of COI based on actuarial and financial expectations, as well as policy value.

Second, the Policy does not provide that adjustments to COI must be applied on a uniform basis; it provides that Phoenix "may re-determine [COI rates] on a basis that does not discriminate unfairly within any class of insureds." *Id.* The Trust has failed to allege what, if anything, regarding the COI adjustment constituted unfair discrimination within a class of insureds.

Third, despite spending several pages purporting to chronicle the change in Phoenix's economic conditions resulting from the 2008-2009 financial crisis, which culminate in the

mistaken assertion that Phoenix is concerned that it "will be unable to meet its contractual obligations as they become due and survive as a company", the Trust makes the conclusory allegation that Phoenix is increasing COI rates in order to recoup past losses rather than based on a change in expectations of future financial performance. *See, e.g.*, Counterclaim, at 64, 93, 102–108, 147.

> **2. The Trust Failed to Establish Subject Matter Jurisdiction for its Counterclaim for Breach of Contract Related to the Policy's Cost of Insurance**

More fundamentally, the breach of contract claim related to the Policy's COI charges must be dismissed because the Trust has failed to establish subject matter jurisdiction, as it did not set forth allegations sufficient to allow this Court to determine that there is an amount in controversy related to the COI charges that exceeds $75,000. FED. R. CIV. P. 12(b)(1); 28 U.S.C. § 1332(a). Whether a defendant must prove independent subject matter jurisdiction for each counterclaim depends upon whether the counterclaim is compulsory or permissive. A compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim. *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 988 (3d Cir. 1984). A permissive counterclaim, on the other hand, requires a basis of federal jurisdiction independent of the opposing party's claim. *Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3d Cir.1975). A permissive counterclaim is broadly defined to include "any claim that is not compulsory." *Kimmel v. Cavalry Portfolio Serv., LLC,* 747 F. Supp. 2d 427, 431 (E.D. Pa. 2010); *see also* FED. R. CIV. P. 13(b). Pursuant to Rule 13 of the Federal Rules of Civil Procedure, a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1).

The Trust's counterclaim for breach of contract is a permissive counterclaim.  Phoenix filed suit against the Trust to seek a declaration that the Policy is void *ab initio* based on a lack of insurable interest at the Policy's inception and as an illegal wagering contract, and to obtain a declaration concerning the disposition of premiums paid on the Policy.  *See* Complaint ¶¶ 36-38. The Trust's counterclaim is that, unrelated to either the issuance of the Policy or Phoenix's actions to seek to void the Policy, Phoenix impermissibly increased the Policy's COI charge. *See* Counterclaim ¶¶ 145-47.  These two claims simply do not arise out of the same transaction or occurrence and do not involve the same common nucleus of operative facts.  Indeed, the only thing the claims have in relation to each other is that both implicate the Policy.  Moreover, the Trust would not be precluded from raising claims related to the Policy's COI charges in subsequent litigation simply due to Phoenix having brought this action to void the Policy.  *See Reinhard & Kreinberg v. Dow Chem. Co.*, No. 3003, 2008 WL 868108, at *3 n.17 (Del. Ch. Mar. 29, 2008) ("Unlike Rule 13(a) counterclaims, permissive counterclaims are not waived, or estopped, or barred when omitted from the original action and a party will not be precluded from bringing his claim in a subsequent action . . . .").  As such, the COI counterclaim is permissive, and the Trust must demonstrate that the Court has independent subject-matter jurisdiction over this counterclaim.  *See Wolfson v. Artisans Sav. Bank*, 83 F.R.D. 552, 555 n.2 (D. Del. 1979) (stating that, even if diversity of citizenship had been asserted as a jurisdictional ground, defendants still would have to meet amount-in-controversy requirement for each permissive counterclaim).  As the Trust has not alleged any facts that would allow the Court to conclude that there was $75,000 in controversy, the COI counterclaim must be dismissed.  *See* FED. R. CIV. P. 12(b)(1); 28 U.S.C. § 1332(a).

### 3. The Trust Fails to State a Claim Upon Which Relief May be Granted Regarding Phoenix's Request to Retain Premiums

Finally, the Trust incorrectly claims that Phoenix breached Section 21 of the Policy by filling this action and, as part of its declaratory judgment relief, seeking to retain all or a portion of the premiums paid on the Policy. *See* Counterclaim ¶¶ 130-33. In other words, the Trust contends that the very filing of this action is a breach of the Policy. This claim is without basis. At best, the Trust is asserting that by filing this action, Phoenix is anticipatorily repudiating obligations the Trust asserts Phoenix has under the Policy (i.e., to return premiums upon contesting a claim to benefits). Courts in this District have repeatedly held that filing a declaratory judgment action does not constitute a repudiation of a contract as a matter of law. *Espinosa*, 2010 WL 3023402, at *8 ("District courts in the Third Circuit have repeatedly held that statements made in the context of a declaratory judgment action are insufficient to establish repudiation as a matter of law."); *Rucker*, 674 F. Supp. 2d 562, 568 (D. Del. 2009) ("[A]n action for declaratory judgment does not indicate an unconditional refusal to comply with contractual obligations, but rather an attempt to carry them out. In effect, [Plaintiff] is stating its belief that the Policy is invalid . . . but is asking the court to determine whether that belief is sound.").

If Phoenix is not entitled to the relief sought (whether by the law, the terms of the Policy, or otherwise), then the Trust can defend against the entry of a judgment providing that relief. What the Trust cannot do is assert that the particular form of relief sought by Phoenix constitutes a breach of the Policy. Indeed, at a fundamental level, Phoenix seeks a judicial declaration that the entire Policy, including Section 21, is void. Either the Policy is void and Phoenix owes no obligations to the Trust (under Section 21 or otherwise) or it is valid and Phoenix will comply with any obligations that become due under the Policy. This exact issue of whether Section 21 (the Policy's incontestability clause) prohibits an insurer from seeking a judicial declaration

regarding the validity of a policy for lack of insurable interest was directly addressed in *Dawe*. *See Dawe*, 28 A. 3d at 1065.

Finally, a claim for breach of contract must include assertions regarding damages to the claimant. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The Trust has failed to plead it has suffered any damages whatsoever as a result of Phoenix's alleged breach. The Trust simply cannot claim to have suffered damages as a result of relief afforded by this Court's entry of the declaratory judgment sought by Phoenix. Thus, this Court should dismiss the Trust's claim for a breach of contract regarding Phoenix's request to retain premiums paid on the Policy for failure to state a claim upon which relief can be granted. *See Moore Business Forms, Inc. v. Cordant Holdings Corp.*, No. 13911, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995) ("To survive a motion to dismiss, a complaint stating a claim for breach of contract must identify a contractual obligation, whether express or implied, a breach of that obligation by the defendant, and *resulting damage to the plaintiff*.") (emphasis added).

## VI.    PRAYER

For the reasons stated above, Phoenix respectfully requests that the Court dismiss the Trust's counterclaims and grant Phoenix such other and further relief to which it may be justly entitled.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff/Counterclaim-Defendant PHL Variable Insurance Company*

*Of Counsel*:

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, McDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580
tom.hetherington@emhllp.com
jarrett.ganer@emhllp.com

Dated: August 20, 2012